## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DARNELL WHITFIELD | * |
| 1501 Gollum Road | * |
| Hanover, MD 21076 | * |
| | * |
| PLAINTIFF, | * |
| | * |
| v. | *    Case No.1:22-cv-02957 |
| | * |
| R&R ENTERPRISE LLC | * |
| 8522 Tidal Springs Drive, | * |
| Montgomery Village, MD 20886 | * |
| | *    **JURY DEMAND.** |
| | * |
| Serve on:    Rakesh Kalotra | * |
|         8522 Tidal Springs Drive, | * |
|         Montgomery Village, MD 20886 | * |
| | * |
|         AND | * |
| | * |
| RAKESH KALOTRA, individually; | * |
| 8522 Tidal Springs Drive, | * |
| Montgomery Village, MD 20886 | * |
| | * |
|         AND | * |
| | * |
| RAJESH SINGH, individually; | * |
| 8522 Tidal Springs Drive, | * |
| Montgomery Village, MD 20886 | * |
| | * |
|         AND | * |
| | * |
| CHECKERS DRIVE-IN RESTAURANTS, | * |
| INCORPORATED. | * |
| 4300 West Cypress Street, Suite 600 | * |
| Tampa, FL 33607 | * |
| | * |
| Serve on:    CSC-Lawyers Incorporating Service | * |
|         Company | * |
|         7 St. Paul Street, Suite 820 | * |
|         Baltimore, MD 21202 | * |
| | * |
| DEFENDANTS. | * |

****************************************************************************

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Darnell Whitfield ("Plaintiff" or "Mr. Whitfield"), by and through his undersigned counsel, Jamaal W. Stafford, Esq., Kwabena Owusu-Koduah, Esq., and the Law Firm of J.W. Stafford, LLC, hereby files this Complaint and Demand for Jury Trial against Defendants, R&R Enterprise LLC, Rakesh Kalotra, Rajesh Singh and Checkers Drive-In Restaurants, Incorporated (together "Defendants") for violations under the Family Medical Leave Act, as amended, 29 U.S.C. § 2601, *et seq*. ("FMLA"), the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the Maryland Wage Payment and Collection Law ("MWPCL"), and for common law wrongful discharge in violation of Maryland public policy.

Immediately after R&R Enterprise LLC ("R&R Enterprise") took over, they began subjecting their employees to a racially hostile work environment, including posting a racially inflammatory poster. When Mr. Whitfield complained, R&R Enterprise directed their ire against Mr. Whitfield, retaliating against him and engaging in a series of abusive and unlawful acts, including, but not limited to: failing to timely pay his wages; failing to engage in an interactive process as required by the ADA after Mr. Whitfield sustained serious injuries while working at R&R Enterprise's restaurant; retaliating against Mr. Whitfield for filing a Workers' Compensation claim; and lastly, refusing to reinstate Mr. Whitfield, and terminating his employment after he took leave under the FMLA.

## PARTIES, JURISDICTION, AND VENUE

1.      Mr. Whitfield is an adult resident of the State of Maryland.

2.      Defendant, R&R Enterprise, is a company formed under the laws of the State of Maryland with its principal place of business at 8522 Tidal Springs Drive, Montgomery Village, Maryland 20886.

3.      Defendant, Checkers Drive-In Restaurants, Inc. ("Checkers"), is a foreign corporation authorized to do business in the State of Maryland.

4.      Defendant, Rakesh Kalotra, is the co-owner of R&R Enterprise and was Mr. Whitfield's immediate supervisor during his tenure with R&R Enterprise.

5.      Defendant, Rajesh Singh, is the co-owner of R&R Enterprise and was Mr. Whitfield's immediate supervisor during his tenure with R&R Enterprise.

6.      This court has federal jurisdiction pursuant to 28 U.S.C. §1331,  29 U.S.C. § 2617, 42 U.S.C. § 12101, *et seq.*, and 42 U.S.C. § 2000e *et seq.*

7.      Further, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Mr. Whitfield's wrongful discharge in violation of public policy, and MWPCL failure to timely pay wage claims.

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b) in that Mr. Whitfield's claims and the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland.

9.      Mr. Whitfield has satisfied all applicable administrative and procedural requirements:

      A. On or around January 29, 2021, Mr. Whitfield filed a timely Charge of Discrimination with the Maryland Commission for Civil Rights ("MCCR"), alleging harassment, hostile work environment, disparate treatment, unpaid

wages, unwarranted discipline as a pretext to discriminate, and retaliation for engaging in protected activity.

B. On or around June 25, 2021, Mr. Whitfield filed an Amended Charge of Discrimination to include Checkers Drive-In Restaurants, Inc as jointly and severally liable for the discriminatory and retaliatory acts. The Amended Charge also included hostile work environment, retaliation, and race, national origin, and disability discrimination violations under Title VII of the Civil Rights Act, ADA, FMLA, Maryland Fair Employment Practices Act, *etc*.

C. After more than 180 days since filing the above-referenced Charges of Discrimination, Mr. Whitfield, by and through his attorneys, requested a Notice of Right to Sue Letter from the EEOC. To date, Mr. Whitfield's attorneys have not received a Right to Sue Letter from the EEOC.

D. More than 180 days have passed since Mr. Whitfield filed his Amended Charge of Discrimination with the MCCR.

E. This Complaint and Demand for Jury Trial is filed within two years of Mr. Whitfield's wrongful termination from his employment.

## FACTS COMMON TO ALL COUNTS

**Mr. Whitfield's career in the Fast-Food Industry.**

10.     Mr. Whitfield, an African American born in the United States, began his career in the fast-food restaurant industry in or around 1979 with the Burger King Corporation, where he had a lengthy and successful managerial career.

11.     In or around 1992, Best Burger Management, LLC, hired Mr. Whitfield to serve as the General Manager at its Checkers Fast Food Restaurant in Patterson, New Jersey. Mr. Whitfield

worked at the Checkers' Patterson, New Jersey location until March 1995, when he relocated to Maryland.

12.     On or around March 31, 1995, Mr. Whitfield began working at the Oxon Hill location as the General Manager for Checkers Drive-In Restaurant franchisee, Maryland Drive-Thru LLC. Maryland Drive-Thru LLC ("Maryland Drive-Thru") is a company formed under the laws of the State of Maryland and owned by Mr. Jay Smith.

13.     As the General Manager for Maryland Drive-Thru's Oxon Hill location, Mr. Whitfield was responsible for implementing Maryland Drive-Thru's policies to achieve their sales, profit, and employee performance goals.

14.     Mr. Whitfield enjoyed a lengthy and rewarding career working for Maryland Drive-Thru and Mr. Jay Smith. While working for Maryland Drive-Thru with Mr. Whitfield as the General Manager, the franchisee expanded to eleven (11) locations in the Maryland area, with Mr. Whitfield promoted and serving as one of two District Managers. During Maryland Drive-Thru's tenure, Mr. Jay Smith served as Mr. Whitfield's supervisor.

15.     As the District Manager, Mr. Whitfield was responsible for ensuring that the Maryland Drive-Thru restaurants in the district met their sales goals and performance metrics, and adhered to company policies and practices

16.     Mr. Whitfield performed his duties with distinction and exceeded his then employers' legitimate performance expectations. For his dedication and exemplary services, Maryland Drive-Thru awarded Mr. Whitfield numerous performance bonuses and awards, including a five-day cruise for his stores' performances.

**R&R Enterprise's ownership and guidance from Checkers Drive-In Restaurants.**

17.     On or around August 31, 2019, Defendant R&R Enterprise, owned by Messrs. Rakesh Kalotra and Rajesh Singh (Males/Indian/able-bodied), purchased six of the Checkers Restaurants owned by Maryland Drive-Thru—all of which would be managed by Mr. Whitfield.

18.     Prior to selling his restaurants to R&R Enterprise, Mr. Jay Smith recommended to R&R Enterprise that Mr. Whitfield remain the District Manager because of his expertise and the familiarity with the operations. Defendant, R&R Enterprise, agreed.

19.     In fact, before Rakesh Kalotra and Rajesh Singh (collectively "Owners") purchased the restaurants from Maryland Drive-Thru, they met with Mr. Whitfield and informed him that he would be staying on as the District Manager.

20.     The Owners also informed Mr. Whitfield that they would honor employees' pay and benefit arrangements that were in place during the Maryland Drive-Thru's ownership.

21.     Under the new ownership, the Owners were Mr. Whitfield's first-line supervisors. As the District Manager, Mr. Whitfield served as the conduit between the Owners and the Managers at the R&R Enterprise-owned Checkers restaurants. Mr. Whitfield was responsible for ensuring that the restaurants met their sales goals and performance metrics, and adhered to company policies and practices. Mr. Whitfield's commitment to his vocation meant that he often handled maintenance, transportation, and human resources tasks that were not a part of his job duties.

22.     Altogether, Mr. Whitfield managed all seven of R&R's Maryland Checkers locations: (1) Allentown-Camp Springs, (2) Frederick Avenue-Baltimore, (3) Reisterstown Road-Baltimore, (4) District Heights, (5) St. Barnabas Road-Marlow Heights, (6) Landover, and (7) Gaithersburg. Mr. Whitfield also managed R&R's approximately seventy-five (75) employees.

23.     Mr. Whitfield was the only District Manager. He performed his duties with diligence and exceeded the Owners' legitimate performance expectations. Mr. Whitfield consistently received satisfactory feedback from the Owners regarding his performance until, and as explained in more detail later, he began complaining about race and national origin discrimination.

24.     As part of his job, Mr. Whitfield was required by R&R Enterprise to attend mandatory quarterly meetings conducted and sponsored by Checkers Drive-In Restaurants. During these meetings, Checkers Drive-In's corporate staff would conduct trainings, discuss operating metrics, provide guidance on operations and management to franchisees. Checkers Drive-In Restaurants also provided franchisees with handbooks and directives on employee health and safety, food safety, and cooking equipment.

25.     Every two to three months, Checkers Drive-In's Franchise Business Consultant, Mr. Tony Luskavage, would tour R&R Enterprise's Checkers locations to ensure that they were compliant with Checkers Drive-In's operational guidelines. When the Owners were unavailable, Mr. Luskavage toured the locations with Mr. Whitfield.

26.     Mr. Luskavage sent weekly business updates to Checkers Drive-In Restaurants and franchises, including R&R Enterprise, to show the financial and marketing impact his portfolio was having on Checkers Drive-In Restaurants.

27.     Checker's Drive-In Restaurants also oversaw R&R Enterprise's customer and employee complaint resolution process. If a customer or an employee made a complaint to the Checkers complaint database[1], R&R Enterprise was required to investigate and resolve the

---

[1] The Checkers Complaint database, known to employees as the Donnelly Report, is database which stores all customer and employee complaints made regarding Checkers.

complaint within forty-eight (48) hours. If they failed to do so, Mr. Luskavage would follow-up with management to inquire about the delay.

**R&R's Enterprise's discriminatory conduct and hostile work environment.**

28.     Not long after R&R Enterprise purchased the restaurants from Maryland Drive-Thru, Mr. Whitfield noticed that the Owners consistently used racially charged language when referring to their predominantly African American staff.

29.     On multiple occasions, between January 2020 and December 2020, Mr. Whitfield attempted to meet with the Owners to discuss their discriminatory behavior and the hostile work environment that the employees were being subjected to on account of their race and national origin. The Owners refused to meet with him. The Owners continued to speak to their African American employees in a threatening manner, frequently using racially inflammatory language, and on some occasions, compared them to animals.

30.     For example, in or around September 2019, despite having agreed to honor the health insurance benefits provided by the previous owners, Maryland Drive-Thru, Rajesh Singh told Mr. Whitfield during a conversation that, "you people are used to getting handouts, but they are going to have to work and prove themselves to me."

31.     In or around November 2019, during a telephone conversation between Mr. Rajesh Singh and Mr. Whitfield, Mr. Rajesh Singh told Mr. Whitfield to monitor an employee, O'Shane Getten (African American), "closely." Mr. Singh told Mr. Whitfield, "those people are very smart, but they are good liars and thieves and will rob you blind."

32.     On or around January 14, 2020, during a telephone conversation with the Owners about the restaurants' metrics, Rakesh Kalotra referred to Mr. Whitfield as the "devil."

Specifically, Mr. Kalotra told Mr. Whitfield that, "Darnell, I don't want to fire you, I would rather work with the 'devil' I know than the 'devil' I don't know."

33.     During that same conversation, Mr. Rakesh Kalotra told Mr. Whitfield that there were too many customers who lingered in the Landover store even after paying and eating their food. To deal with this issue, Mr. Rakesh Kalotra asked Mr. Whitfield to call the Landover, Maryland Police Department and falsify a police report alleging that there were people hanging outside of the property "doing drugs." Mr. Whitfield found this incredibly offensive because the store was predominantly visited by African Americans, and Mr. Kalotra's assertions were false.

34.     Again, on February 7, 2020, in an email to the Owners, Mr. Whitfield wrote that another employee had communicated to him that she "constantly [felt] bullied and threatened by [the Owners] because of [their] tone and demands." Mr. Whitfield explained to the Owners that the employee came to him because R&R Enterprise did not have a Human Resources Department and that she wanted to make sure Mr. Whitfield "was aware of how [she felt]." Mr. Whitfield also informed the Owners that the employee had spoken with other managers who stated that they too had witnessed the Co-owner, Rakesh Kalotra, "approaching [the employee], waving papers and yelling in an unprofessional tone."

35.     In or around June 2020, the Maryland Health Department temporarily closed Defendant's St. Barnabas-Marlow Heights location for poor pest management. Rakesh Kalotra responded by telling the employees that "you people love living like pigs, but you are not going to treat my store like that."

36.     During a conference call on December 5, 2020, after having learned that an employee tested positive for Covid-19, co-owner Rakesh Kalotra told Mr. Whitfield, "What is it going to take for you people to wear the masks?"

37.     In or around December 2020, the Owners requested Mr. Whitfield to drive by their stores to monitor their activity even though Mr. Whitfield had informed them that he had been exposed to COVID-19.

**The Owners forced Mr. Whitfield to hang a racially inflammatory poster at their stores.**

38.     On or around December 9, 2020, Rakesh Kalotra emailed Mr. Whitfield a poster with instructions to "print in color, laminate and [post three copies to each store before Monday December 14, 2020]."

39.     The poster featured six photographs of a Black Labrador Retriever with instructions on how to properly wash hands and wear masks.

40.     On or around December 10, 2020, Mr. Whitfield spoke to Rakesh Kalotra via telephone and told him that he found the poster to be offensive. Rakesh Kalotra ignored Mr. Whitfield's complaints. Mr. Whitfield hung up the posters, as instructed.

41.     Again, on or around December 20, 2020, Mr. Whitfield reiterated to the Owners, via telephone, that the poster was offensive. Mr. Whitfield informed them that the African American staff and customers also found the poster to be "offensive" and "derogatory."

42.     During that telephone call, Mr. Whitfield informed the Owners that pictures of the poster had been anonymously posted on social media with the caption, "Racism is real. This sign was posted on the door where I work. What *does* [sic] black dogs have to do with Covid-19. Only *black-African American* [sic] works at my location."

43.     In response to his complaint about the racially inflammatory poster, co-owner Rakesh Kalotra told Mr. Whitfield that he was "insubordinate" and that they "don't care what the employees think."

44.     On December 21, 2020, after telling Mr. Whitfield that the poster was not offensive, the Owners emailed the restaurant managers and asked them to remove the posters. They also wrote that "the poster was purely intended for training purposes and not intended to offend anyone."

45.     That very same day, an employee responded to that email stating, "[Good morning], we understand that it was supposed to be used a training tool however we strongly feel that in no way shape or form should it have been a picture of a dog[.] we are all human and *im* [sic] sure that hundreds of other pictures could have been used. [B]ut this one was *chose???* [sic]. Also to be a black dog which as African Americans which is very offensive, and many people are very upset we are in a very trying time and many had a big issue with this[.]"

46.     On December 21, 2020, after the Defendants called Mr. Whitfield "insubordinate," Defendants requested a meeting with Mr. Whitfield. However, because of a scheduling conflict caused by a meeting with Mr. Tony Luskavage, Rakesh Kalotra rescheduled the meeting with Mr. Whitfield to December 22, 2020.

47.     On December 22, 2020, after mandating that Mr. Whitfield attend a mandatory meeting over an hour away from his home, Defendants did not show up and did not provide any explanation as to why they never showed up. Mr. Whitfield believed that Defendant's actions were in retaliation for his complaint about the racially offensive poster and hostile work environment.

48.     On December 22, 2020, Mr. Whitfield filed a formal complaint with Checkers regarding the Owners' failure to timely pay employees, their ongoing discriminatory treatment, retaliatory acts, and hostile work environment on account of his race and national origin through the Checkers website, as called for in its Team Member Handbook (www.Checkers.com).

49.     The Checkers Team Member Handbook states that "CHECKERS will take all necessary steps to ensure that each employee's work environment is free of unlawful discrimination or harassment based on race, color, religion, sex, age, national origin, veteran status, or disability." The Checkers Team Member Handbook assured that "[employees] who file a complaint under this policy are assured that no reprisal will be made or their job status in any way affected because of their registering a complaint with management."[2]

50.     On or around January 11, 2021, attorney for R&R Enterprise, Stephen A. Shechtel ("Mr. Shechtel") emailed Mr. Whitfield an investigatory letter regarding his December 22, 2020, complaint against R&R Enterprise and Checkers Drive-In Restaurant.

51.     In the letter, Mr. Shechtel asked Mr. Whitfield to provide responses to various questions about his allegations and advised Mr. Whitfield that he had been retained to investigate Mr. Whitfield's claims in accordance with the Checker's Team Member Handbook and applicable Federal and State laws.

52.     Mr. Shechtel also assured Mr. Whitfield that R&R Enterprise would "not take any actions or reprisals against [Mr. Whitfield] for registering a complaint." Mr. Shechtel also assured Mr. Whitfield that he would investigate Mr. Whitfield's grievances fully and prepare a report detailing his recommendation for both Mr. Whitfield and R&R Enterprise to review.

53.     On or around January 28, 2021, Mr. Whitfield responded to Mr. Shechtel's investigatory letter.

54.     Mr. Shechtel and R&R Enterprise failed to respond to Mr. Whitfield's responses to Mr. Shechtel's investigatory letter.

---

[2] Checkers Team Member Handbook, Equal Employment Opportunity, Page 8.

55. Checkers Drive-In Restaurants failed to respond to Mr. Whitfield's December 22, 2020 complaint.

**Defendants retaliated against Mr. Whitfield after he complained about race and national origin discrimination, and hostile work environment.**

56. Immediately following Mr. Whitfield's complaint to Checkers and R&R Enterprise, Defendants began a sustained campaign of harassment and retaliation against Mr. Whitfield.

57. On December 21, 2020, even though Mr. Whitfield had already notified them on November 30, 2020, that he would be taking leave from work from December 18, 2020 to December 20, 2020, the Owners emailed him that they do not remember him requesting days off. When Mr. Whitfield reminded them of his request, the Owners subsequently asked Mr. Whitfield why he was traveling if his wife and son had tested positive for COVID-19 over a week prior.

58. On December 28, 2020, as pretext to issue Mr. Whitfield a reprimand, Rakesh Kalotra emailed Mr. Whitfield and chastised him for not timely producing a Compliance Metrix ("CMX") report.[3] Mr. Kalotra warned Mr. Whitfield that this was his "final warning" as that he would "face disciplinary actions leading to a suspension or termination" if the issue was not addressed immediately. Mr. Kalotra wrote that he had been emailing Mr. Whitfield for "a few months" about producing the CMX reports. None of these were true.

59. Mr. Whitfield timely produced the CMX reports to the Owners on December 26, 2020, when he returned to work. Moreover, Mr. Kalotra had only emailed Mr. Whitfield about the requests on December 16, 2020, not "months" earlier, as Mr. Kalotra stated.

---

[3] Checker uses the CMX Report to log food safety and temperature monitoring, sanitation, facilities, and equipment evaluations.

60.     During or around the first week in January 2021, Mr. Whitfield notified the Owners that he had an upcoming appointment with his doctor on Wednesday, January 13, 2021.

61.     On January 13, 2021, Mr. Whitfield took medical leave from work because of the stress related illness caused by Defendants' conduct. Mr. Whitfield's doctor, Dr. Barry Bercovitz, MD, wrote that "it is his medical opinion that [Mr. Whitfield] may return to work on January 19, 2021."

62.     On January 16, 2021, Mr. Whitfield emailed Rakesh Kalotra regarding paperwork for a new hire. In that email, Mr. Whitfield asked Mr. Kalotra why the new hire, Jagdish Sharma (Male/India), was listed as the "District Manager" in the paperwork.

63.     In response, Rakesh Kalotra instructed Mr. Whitfield not to return to work until he completed a "Physician's Release to Return Work Form." Rakesh Kalotra told Mr. Whitfield that "[once] you have this letter completed by your *Physician* [sic] please call me and I will meet you. Until I have this letter in my possession, you are advised to adhere to your doctor's advice of complete rest. I am also advising you to refrain from communicating with our restaurants until such time. I am handling that part of the business and will continue to do so."

64.     On January 21, 2021, Mr. Whitfield submitted the signed Physician's Release to Return to Work Form. Dr. Barry Bercovitz, MD, reviewed Mr. Whitfield's job description and the specific tasks within the job description and released him to return to work with no restrictions.

65.     When Mr. Whitfield returned on January 22, 2021, he met with the Owners at the Gaithersburg location. When Mr. Rakesh Kalotra arrived at the meeting, he slammed his papers on a table, furiously walked up to Mr. Whitfield, and demanded that Mr. Whitfield "say it now and get it off [his] chest since [he] have so much to say." Mr. Whitfield responded that he would provide his response to Mr. Shechtel within a week.

66.     That same morning, R&R Enterprise issued him a final written warning for alleged unsatisfactory job performance. R&R Enterprise falsely stated that the final warning was issued because of an alleged "lack of follow up on [Mr. Whitfield's] part, resulting in failure of restaurant to comply with CMX/Checkers mandated food and safety standards; and a lack of follow up in employee and manager training [causing] food safety and service-related issues."

67.     R&R Enterprise issued this final written warning to Mr. Whitfield at the Gaithersburg location with Mr. Jagdish Sharma present.

**Defendants refused to reinstate Mr. Whitfield and retaliated against him for taking leave under the FMLA and for filing a Workers' Compensation claim.**

68.     On January 22, 2021, as he had done for R&R Enterprise's many other stores and at the request of the Owners, Mr. Whitfield drove to Defendant's Landover, Maryland restaurant to conduct mechanical repairs to the technical equipment. Mr. Whitfield's job duties did not include maintenance or repairs. At the Landover restaurant, Mr. Whitfield fell from a ladder while attempting to fix the wiring for malfunctioning computers.

69.     Mr. Whitfield sustained injuries to his head, neck, shoulder, back and hip, and needed medical attention at Righttime Medical Care, 2401 Brandermill Boulevard, Gambrills, Maryland.

70.     Immediately following the fall, the General Manager of the Landover location, Alana Glasgow, called the owners and informed them about the incident.

71.     On or around January 22, 2021, Rajesh Singh texted Mr. Whitfield that he had heard about Mr. Whitfield's fall at the Landover location.

72.     On January 25, 2021, Mr. Whitfield, visited Head First Sports Injury and Concussion Care. Mr. Whitfield's condition was severe enough that Dr. Karen Laugel, M.D. instructed him not to return to work until he is reevaluated in two weeks' time. Dr. Karen Laugel

instructed Mr. Whitfield to refrain from driving or heavy lifting. Mr. Whitfield was to make appointments for a head and neck CT scans, an orthopedic evaluation for his neck, shoulder and back, and physical therapy.

73.     On or around January 25, 2021, Mr. Whitfield emailed Dr. Karen Laugel's note to R&R Enterprise and requested FMLA paperwork.

74.     Mr. Whitfield also filed a Workers' Compensation claim on or around January 25, 2021.

75.     R&R Enterprise failed to provide any of the FMLA documents Mr. Whitfield requested.

76.     That very same day, Rakesh Kalotra emailed the restaurant managers that "Jagdish Sharma will be taking over all of Darnell's responsibilities." Mr. Jagdish Sharma had already been working for the Defendants, as he was introduced a week prior during a quarterly meeting.

77.     On or around January 27, 2021, R&R Enterprise, via their attorney, Mr. Shechtel, emailed Mr. Whitfield that "effective immediately, neither [he], Mrs. Whitfield, nor anyone for or on your behalf are to be on or about any property owned, leased or operated by the R&R Enterprise unless approved in advance in writing by my office. As of the date of this letter, neither you, Mrs. Whitfield, nor anyone for or on your behalf are to communicate with, or attempt to communicate with, any R&R Enterprise employee regarding the incident of January 22, 2021, or your association with R&R Enterprise."

78.     R&R Enterprise also requested that Mr. Whitfield release all of his medical records to Mr. Shechtel.

79.     On January 29, 2021, Mr. Whitfield filed a Charge of Discrimination against Defendants with the Maryland Commission on Civil Rights.

80.     On or around February 3 and February 17, 2021, Mr. Whitfield emailed R&R Enterprise and requested FMLA paperwork. R&R Enterprise did not respond.

81.     Mr. Whitfield—at home nursing his injuries and still waiting on Workers' Compensation claim—was in no position to miss paychecks. R&R Enterprise was required to pay Mr. Whitfield via direct deposit on February 3, 2021.

82.     However, without receiving a request from Mr. Whitfield or providing notice to Mr. Whitfield, Defendants unilaterally changed the method of payment to Mr. Whitfield from direct deposit to a traditional paper check.

83.     The Owners then emailed Mr. Whitfield, who was still injured and receiving medical treatment following his fall, to contact his apparent replacement, Jagdish Sharma, to pick up his paycheck and surrender his work keys and any R&R possessions.

84.     Mr. Whitfield did not receive his paycheck for another two weeks; on February 16, 2021. However, the Owners failed to endorse the check. Mr. Whitfield alerted the Owners to the issue immediately, but R&R did not correct it until February 24, 2021—three weeks after the scheduled direct deposit date.

85.     On March 31, 2021, Mr. Whitfield emailed the Owners and informed them he had been medically cleared to return to light duty work beginning April 5, 2021. The only light duty restrictions imposed on Mr. Whitfield's return to work were: (1) "No lifting over 30 pounds, and (2) no prolonged standing/sitting."

86.     The District Manager position is inherently light-duty and would require little to no modification by Defendants. As the District Manager, Mr. Whitfield served as the conduit between

the Owners and the Managers at the R&R Enterprise-owned Checkers restaurants. Mr. Whitfield was responsible for ensuring that the restaurants met their sales goals and performance metrics, and adhered to company policies and practices.

87.     In that same email, Mr. Whitfield reiterated to the Owners that although he still had not received the FMLA paperwork he previously requested, he was nevertheless looking forward to resuming his duties as the District Manager. Defendants did not respond to Mr. Whitfield.

88.     On April 2, 2021, before Mr. Whitfield could return to work, Mr. Whitfield suffered a setback in his rehabilitation, and his physician extended his disability leave to April 19, 2021. Mr. Whitfield again reached out to the Defendants about resuming his duties, however, Defendants failed to engage in an interactive discussion with Mr. Whitfield about his return.

89.     On April 12, 2021, Defendants terminated Mr. Whitfield's employment. Defendants wrote in a letter to Mr. Whitfield that they were terminating his employment because they were "unable to keep [his] managerial position open for an extended period of time."

90.     According to the Checkers Team Member Handbook, Checkers will pay an employee their accrued vacation time upon termination of employment.[4]

91.     Upon termination of Mr. Whitfield's employment, R&R Enterprise failed to pay Mr. Whitfield approximately $841.80 for December 2020 mileage reimbursement; approximately $445.05 for January 2021 mileage reimbursement; and approximately three weeks of paid time off, which amounts to over $6,000.00.

## Count I

### Unlawful interference and denial of benefits under the Family Medical Leave Act 29 U.S.C. 2601, et seq.

---

[4] Checkers Team Member Handbook, Vacations, Page 29-30.

**Against R&R Enterprise, LLC, Checkers Drive-In Restaurants, Inc., and Rakesh Kalotra and Rajesh Singh, individually.**

92.     Plaintiff incorporates Paragraphs 1 through 91 of this Complaint as if fully alleged herein.

93.     At all times relevant to the allegations in this Complaint, Mr. Whitfield was an eligible "employee" within the meaning of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §2611 (2), in that he had been employed by the Defendants for more than 12 months at the time he exercised his right to take Family Medical Leave, and during the 12-month period immediately preceding his wrongful termination, Mr. Whitfield had worked more than one thousand two hundred fifty (1,250) hours for the Defendants. As such, Mr. Whitfield was, and remains, entitled to the protections under the FMLA.

94.     At all times relevant to this action, Defendant, R&R Enterprise, operated continuously in the State of Maryland and was an "employer" within the meaning of 29 U.S.C. §2611(4). R&R Enterprise employed fifty (50) or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

95.     At all times relevant to this action Defendant, Checkers Drive-In Restaurants, operated continuously in the State of Maryland and was an "employer" within the meaning of 29 U.S.C. §2611(4). Checkers Drive-Thru Restaurants employed fifty (50) or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

96.     At all times relevant to this action, Owners Rajesh Singh and Rakesh Kalotra owned and managed R&R Enterprise, and supervised Mr. Whitfield.

97.     On January 22, 2021, Mr. Whitfield fell and sustained serious injuries while climbing a ladder at Defendant, R&R Enterprise's, Landover Store to repair the wiring for the

store's malfunctioning computers. Mr. Whitfield sustained injuries to his head, neck, shoulder, and back, which required immediate medical attention at Righttime Medical Care, 2401 Brandermill Boulevard, Gambrills, Maryland.

98.     Immediately following the fall, Alana Glasgow, Manager at Defendant's Landover Store, notified R&R Enterprise of Mr. Whitfield's fall and injuries.

99.     On January 25, 2021, Mr. Whitfield visited Head First Sports Injury and Concussion Care. Mr. Whitfield's condition was severe enough that Dr. Karen Laugel, M.D. instructed him not to return to work until he is reevaluated in two weeks' time. Dr. Karen Laugel instructed Mr. Whitfield to refrain from driving or heavy lifting. Mr. Whitfield was to make appointments for a head and neck CT scans, an orthopedic evaluation for his neck, shoulder and back, and physical therapy. Mr. Whitfield's injury required that he receive physical therapy at least three times a week.

100.     Mr. Whitfield notified Owners that he intended to take leave under the FMLA, as he had sustained severe injuries which required intensive medical attention and an extensive period of recovery.

101.     On January 25, 2021, Rakesh Kalotra emailed the restaurant managers that "Jagdish Sharma will be taking over all of Darnell's responsibilities." Mr. Jagdish Sharma had already been working for the Defendants, as he was introduced a week prior during a quarterly meeting.

102.     On or around January 27, 2021, R&R Enterprise, via their attorney, Mr. Shechtel, emailed Mr. Whitfield that "effective immediately, neither [he], Mrs. Whitfield, nor anyone for or on your behalf are to be on or about any property owned, leased or operated by the R&R Enterprise unless approved in advance in writing by my office. As of the date of this letter, neither you, Mrs. Whitfield, nor anyone for or on your behalf are to communicate with, or attempt to

communicate with, any R&R Enterprise employee regarding the incident of January 22, 2021, or your association with R&R Enterprise."

103.    On several more occasions, Mr. Whitfield requested FMLA documents from R&R Enterprise, but they never provided them.

104.    Defendants did not contact Mr. Whitfield regarding his medical condition or FMLA request or respond to his requests regarding same.

105.    At no point during the relevant period did the Defendant provide Mr. Whitfield with written or verbal notice of their intention to deny restoration to his District Manager position.

106.    On or about April 12, 2021, Defendant, R&R Enterprise terminated Mr. Whitfield's employment in violation of FMLA, 29 U.S.C. § 2615 (a).

107.    Defendants' unlawful conduct, as set forth above, was willful and wanton, and/or was done with malice or in reckless disregard for Plaintiff's rights under the FMLA. Defendants' unlawful conduct was not in good faith and Defendants lacked reasonable grounds for believing that this conduct was not a violation of 29 U.S.C.§ 2615(a).

108.    Defendant's unlawful conduct was the proximate cause of the economic losses suffered by Plaintiff.

109.    As a result of the acts described herein, Mr. Whitfield has suffered considerable damages, including, but not limited to, loss of pay and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

## Count II
### Failure to engage in the Interactive Process in violation of the
### Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* against R&R Enterprise, LLC
### and Checkers Drive-In Restaurants, Inc.

110.    Plaintiff incorporates Paragraphs 1 through 91 of this Complaint as if fully alleged herein.

111.    At all relevant times, Mr. Whitfield suffered from a "disability" as defined in 42 U.S.C. § 12102(1). Mr. Whitfield suffered injuries to his head, neck, shoulder, and back following a fall at Defendant, R&R Enterprise's, Landover store. Mr. Whitfield's Doctor diagnosed him with a concussion and instructed him to attend physical therapy for his neck, shoulder, and back injuries.

112.    The disability substantially limited a major life function i.e., driving, walking, sitting, and standing for prolonged periods. Mr. Whitfield's condition was severe enough that Dr. Karen Laugel, M.D. instructed Mr. Whitfield not to return to work until he is reevaluated in two weeks' time.

113.    At all times relevant to this action, R&R and Checkers were "employers" within the meaning of 42 U.S.C. §12111(5). R&R Enterprise and Checkers each employed fifteen (15) or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Checkers and R&R exercised sufficient control over Mr. Whitfield's work, making Defendants the single and or joint employers under the ADA.

114.    Defendants had notice of and knew of Mr. Whitfield's disability status pursuant to his FMLA leave requests, Workers' Compensation claim, email correspondence, and several doctor's notes provided to them. Defendants also knew of Mr. Whitfield's fall and subsequent injuries when Alana Glasgow notified them of such on January 22, 2021.

115.    Defendant also regarded Mr. Whitfield as disabled when Rakesh Kalotra emailed the restaurant managers on January 25, 2021, that "Jagdish Sharma [would] be taking over all of Darnell's responsibilities."

116.    On March 31, 2021, Mr. Whitfield emailed Defendants and informed them he had been medically cleared to return to work beginning April 5, 2021, with light duty limitations to refrain from driving, lifting over 30 pounds, and prolonged sitting or standing.

117.    Defendant, R&R Enterprise, did not contact Mr. Whitfield regarding his medical condition nor did they respond to Mr. Whitfield's request for reasonable accommodation.

118.    Defendant, R&R Enterprise, never engaged Mr. Whitfield in the interactive process.

119.    Mr. Whitfield was responsible for ensuring that the restaurants met their sales goals and performance metrics, and adhered to company policies and practices. The District Manager position is inherently light-duty and would require little to no modification by Defendants.

120.    On or about April 12, 2021, Defendant, R&R Enterprise, terminated Mr. Whitfield's employment, citing an inability to perform the essential functions of his District Manager position.

121.    At all relevant times, Mr. Whitfield had the requisite skill, experience, and other job-related requirements of his position, and with or without accommodation, could perform the essential functions of his position.

122.    Defendants failed to engage in an interactive process with Mr. Whitfield about the feasibility of light duty assignments. Had a discussion occurred, Mr. Whitfield would have been able to return to his position as District Manager.

123.    Defendants' refusal to engage in an interactive discussion; refusal to reinstate Mr. Whitfield to his position; and termination of Mr. Whitfield's employment cannot be explained rationally, except by pretext.

124.     Defendant's unlawful conduct, as set forth above, was willful and wanton, and/or was done with malice or in reckless disregard for Plaintiff's rights under the ADA. Defendants' unlawful conduct, as set forth above, was not in good faith and Defendants lacked reasonable grounds for believing that this conduct was not a violation of ADA.

## Count III

**Hostile Work Environment in violation of**

**Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq*., against R&R Enterprise, LLC and Checkers Drive-In Restaurants, Inc.**

125.     Plaintiff incorporates Paragraphs 1 through 91 of this Complaint as if fully alleged herein.

126.     At all times relevant to this action, R&R and Checkers were "employers" within the meaning of 42 U.S.C. §2000e(b). R&R Enterprise and Checkers each employed fifteen (15) or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

127.     Checkers and R&R exercised sufficient control over Mr. Whitfield's work, making Defendants joint employers under 42 U.S.C. §2000e(b).

128.     Mr. Whitfield was born in the USA and is an African American; thus, he is a member of a protected class.

129.     As a member of a protected class, Mr. Whitfield has a right to the enjoyment of all benefits, privileges, terms, and conditions of his employment, including being free from a hostile work environment on account of his race and national origin.

130.     Not long after R&R Enterprise purchased the restaurants from Maryland Drive-Thru, Owners, Rakesh Kalotra and Rajesh Singh, subjected him and other African American employees to a hostile work environment on account of their race and national origin.

131.    For example, in or around September 2019, despite having agreed to honor the health insurance benefits instituted by the previous owners, Maryland Drive-Thru, Rakesh Kalotra told Mr. Whitfield during a conversation that, "you people are used to getting handouts, but they are going to have to work and prove themselves to me."

132.    In or around November 2019, during a telephone conversation between Mr. Rajesh Singh and Mr. Whitfield, Mr. Rajesh Singh told Mr. Whitfield to monitor an employee, O'Shane Getten (USA/African American), "closely." Mr. Singh said, "those people are very smart, but they are good liars and thieves and will rob you blind."

133.    On or around January 14, 2020, during a telephone conversation with the Owners about the restaurants' metrics, Rakesh Kalotra referred to Mr. Whitfield as the "devil." Specifically, Mr. Kalotra told Mr. Whitfield that, "Darnell, I don't want to fire you, I would rather work with the 'devil' I know than the 'devil' I don't know."

134.    During that same conversation, Mr. Rakesh Kalotra asked Mr. Whitfield to call the Landover, Maryland Police Department and falsify a police report alleging that there were people hanging outside of the property "doing drugs." Mr. Whitfield found this incredibly offensive because the store was predominantly visited by African Americans, and Mr. Kalotra's assertions were false.

135.    Again, on February 7, 2020, in an email to the Owners, Mr. Whitfield wrote that an African American employee had communicated to him that she was in a "hostile work environment" because she "constantly [felt] bullied and threatened by [the owners] because of [their] tone and demands."

136.    In the same email, Mr. Whitfield explained to the Owners that the employee came to him because R&R Enterprise did not have a Human Resources Department and that she wanted

25

to make sure Mr. Whitfield "was aware of how [she felt]." Mr. Whitfield also informed the Owners that the employee had spoken with other managers who stated that they too had witnessed the Co-owner, Rajesh Singh, "approaching [the employee] and yelling in an unprofessional tone."

137.    In or around June 2020, the Maryland Health Department temporarily closed Defendant's St. Barnabas-Marlow Heights location for poor pest management. Owners responded by telling the employees that "you people love living like pigs, but you are not going to treat my store like that."

138.    On December 5, 2020, after an employee tested positive for Covid-19, co-owner Rakesh Kalotra told Mr. Whitfield during a conference call, "What is it going to take for you people to wear the masks?"

139.    On or around December 9, 2020, Rakesh Kalotra emailed Mr. Whitfield a poster with instructions to "print in color, laminate and [post three copies to each store before Monday December 14, 2020]." The poster featured six photos of a black Labrador Retriever with instructions on how to properly wash your hands and wear masks. Mr. Whitfield informed the Owners that he and the employees found the poster to be racially inflammatory and offensive, but the Owners ignored their concerns.

140.    On December 22, 2020, Mr. Whitfield filed a formal complaint with Checkers regarding the Owners' ongoing discriminatory treatment, retaliatory acts, and hostile work environment on account of his race and national origin through the Checkers website as called for in its Team Member Handbook (www.Checkers.com).

141.    After an initial inquiry from the attorney for R&R Enterprise, Mr. Shechtel, neither R&R Enterprise or Checkers Drive-Thru Restaurant, who oversaw R&R Enterprise's employee

and customer complaint process, addressed Mr. Whitfield's complaints about the hostile work environment he was being subjected to.

142.    Mr. Whitfield's race was a motivating factor in Defendant's decision to subject him to a hostile and abusive work environment.

143.    Defendant's conduct was so severe or pervasive that it altered the terms and conditions of Mr. Whitfield's employment.

144.    Indeed, on January 13, 2021, Mr. Whitfield took leave from work because of the stress related illness caused by Defendants' conduct. Mr. Whitfield's doctor, Dr. Barry Bercovitz, MD., advised Mr. Whitfield not to return to work for approximately week.

145.    As a result of the acts described herein, Plaintiff has suffered considerable damages, including, but not limited to, loss of pay and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

**<u>Count IV</u>**

**Retaliation in violation of**

**Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq*. against R&R Enterprise, LLC and Checkers Drive-In Restaurants, Inc.**

146.    Plaintiff incorporates Paragraphs 1 through 91 of this Complaint as if fully alleged herein.

147.    At all times relevant to this action, R&R and Checkers were "employers" within the meaning of 42 U.S.C. §2000e(b). R&R Enterprise and Checkers each employed fifteen (15) or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

148.     Checkers and R&R exercised sufficient control over Mr. Whitfield's work, making Defendants joint employers under 42 U.S.C. §2000e(b).

149.     Mr. Whitfield engaged in a protected activity in that he complained to Defendants about a racially hostile work environment.

150.     Specifically, on or around December 10, 2020, Mr. Whitfield spoke to Rakesh Kalotra via telephone and told him that he found the poster to be offensive. Rakesh Kalotra ignored Mr. Whitfield's concerns. Mr. Whitfield hung up the posters, as instructed.

151.     Mr. Whitfield reiterated his complaint on December 20, 2020, when he complained to the Owners, via telephone, that the poster was offensive. Mr. Whitfield informed them that the African American staff and customers also found the poster to be "offensive" and "derogatory."

152.     On December 21, 2020, in response to his complaint about the racially insensitive poster, Rakesh Kalotra told Mr. Whitfield that he was "insubordinate."

153.     On December 22, 2020, after mandating that Mr. Whitfield attend a mandatory meeting over an hour away from his home, Defendants did not show up and did not provide any explanation as to why they never showed up. Mr. Whitfield believed that Defendant's actions were in retaliation for his complaint about the racially offensive poster and hostile work environment.

154.     On December 22, 2020, Mr. Whitfield filed a formal complaint with Checkers regarding the Owners' ongoing discriminatory treatment, retaliatory acts, and hostile work environment on account of his race and national origin through the Checkers website as called for in its Team Member Handbook (www.Checkers.com).

155.     The Checkers Team Member Handbook states that "CHECKERS will take all necessary steps to ensure that each employee's work environment is free of unlawful discrimination or harassment based on race, color, religion, sex, age, national origin, veteran status,

or disability." The Checkers Team Member Handbook assured that "[employees] who file a complaint under this policy are assured that no reprisal will be made or their job status in any way affected because of their registering a complaint with management."[5]

156.   On or around January 11, 2021, attorney for R&R Enterprise, Mr. Shechtel emailed Mr. Whitfield an investigatory letter regarding his December 22, 2020, complaint against R&R Enterprise and Checkers Drive-In Restaurants.

157.   Mr. Shechtel also assured Mr. Whitfield that R&R Enterprise would "not take any actions or reprisals against [Mr. Whitfield] for registering a complaint." Mr. Shechtel also assured Mr. Whitfield that he would investigate Mr. Whitfield's grievances fully and prepare a report detailing his recommendation for both Mr. Whitfield and R&R Enterprise to review.

158.   Immediately following Mr. Whitfield's formal complaint to Checkers and R&R Enterprise, Defendants began a sustained campaign of harassment and retaliation against Mr. Whitfield.

159.   On December 21, 2020, even though Mr. Whitfield had already notified them on November 30, 2020, that he would be taking leave from work from December 18, 2020, to December 20, 2020, the Owners emailed him that they did not remember him requesting days off. When Mr. Whitfield reminded them of his request, the Owners subsequently asked Mr. Whitfield why he was traveling if his wife and son had tested positive for COVID-19 over a week prior.

160.   On December 28, 2020, as pretext to issue Mr. Whitfield a reprimand, Rakesh Kalotra emailed Mr. Whitfield and chastised him for not timely producing a "CMX report."[6] Mr. Kalotra wrote that he had been emailing Mr. Whitfield for "a few months" about

---

[5] Checkers Team Member Handbook, Equal Employment Opportunity, Page 8.
[6] Checker uses the CMS Report to log food safety and temperature monitoring, sanitation, facilities, and equipment evaluations.

producing the CMX reports. None of this was true. Mr. Kalotra warned Mr. Whitfield that this was his "final warning" as that he would "face disciplinary actions leading to a suspension or termination" if the issue was not addressed immediately.

161.    In fact, Mr. Whitfield timely produced the CMX requests to the Owners on December 26, 2020, when he returned to work. Moreover, Mr. Kalotra had only emailed Mr. Whitfield about the requests on December 16, 2020, not "months" earlier, as falsely stated by Mr. Kalotra.

162.    After taking leave on January 13, 2021, due the stress caused by Defendants' conduct, Mr. Whitfield returned to work on January 22, 2021. When Mr. Whitfield returned, R&R Enterprise issued him a written warning. According to Defendant, R&R Enterprise, the written warning was a final warning to Mr. Whitfield that his job performance was unsatisfactory. R&R Enterprise falsely listed the following as the sole grounds for the final warning: an alleged "lack of follow up on [Mr. Whitfield's] part resulting in failure of restaurant to comply with CMX/Checkers mandated food and safety standards; and a lack of follow up in employee and manager training [causing] food safety and service-related issues."

163.    Defendants continuously subjected Mr. Whitfield to unwarranted evaluations; baseless reprimands; failed to timely pay his wages; and ultimately, terminated his employment.

164.    But for Mr. Whitfield's participation in the above protected activity, he would not have suffered these adverse employment actions.

165.    As a result of the acts described herein, Plaintiff has suffered considerable damages, including, but not limited to, loss of pay and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

## Count V

## Race Discrimination in violation of

## Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq*. against R&R Enterprise, LLC and Checkers Drive-In Restaurants, Inc.

166.    Plaintiff incorporates Paragraphs 1 through 91 of this Complaint as if fully alleged herein.

167.    At all times relevant to this action, R&R and Checkers were "employers" within the meaning of 42 U.S.C. §2000e(b). R&R Enterprise and Checkers each employed fifteen (15) or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

168.    Checkers and R&R exercised sufficient control over Mr. Whitfield's work, making Defendants joint employers under 42 U.S.C. §2000e(b).

169.    Mr. Whitfield is an African American and, thus, a member of a protected class. Under the Act, Mr. Whitfield has a right to be free from racial discrimination in the hiring and discharge of him as an employee, and in the compensation, conditions, and privileges of employment. *See* 42 U.S.C. § 2000e *et seq*.

170.    The Owners were aware that Mr. Whitfield was African American and regarded him as such since they began working with Mr. Whitfield.

171.    Mr. Whitfield performed his duties with diligence and exceeded the Owners' legitimate performance expectations.

172.    On January 22, 2021, R&R Enterprise issued Mr. Whitfield a written reprimand, baselessly citing unsatisfactory performance. At the time the reprimand was issued, Mr. Whitfield was meeting Defendant's legitimate performance expectations.

173.    Defendants also refused to reinstate Mr. Whitfield to his position as a District Manager, and instead, hired Mr. Jagdish Sharma (Indian) to assume all of Mr. Whitfield's responsibilities.

174.    On or about April 12, 2021, Defendant, R&R Enterprise, terminated Mr. Whitfield's employment in violation of 42 U.S.C. § 2000e *et seq*.

175.    Mr. Whitfield suffered adverse employment actions when he received unwarranted negative evaluations, baseless reprimands, denial of his wages, and, ultimately, termination of his employment.

176.    Mr. Whitfield was subjected to harassment and unfair scrutiny which similarly situated non-African American managers did not receive. But for Mr. Whitfield's race (African American), he would not have suffered these adverse employment actions.

177.    As a result of the acts described herein, Plaintiff has suffered considerable damages, including, but not limited to, loss of pay and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

### Count VI
**National Origin Discrimination in violation of**
**Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq*. against R&R Enterprise, LLC and Checkers Drive-In Restaurants, Inc.**

178.    Plaintiff incorporates Paragraphs 1 through 91 of this Complaint as if fully alleged herein.

179.    Mr. Whitfield was born in the United States of America and, thus, a member of a protected class. Mr. Whitfield has a right to be free from national origin discrimination in the

compensation, conditions, privileges of employment, and the hiring and discharge of him as an employee.

180.    The Owners were aware that Mr. Whitfield was native to the United States of America and regarded him as such.

181.    Mr. Whitfield performed his duties with diligence and exceeded the Owners' legitimate performance expectations.

182.    Defendants continuously subjected Mr. Whitfield to unwarranted evaluations and baseless reprimands. Defendants without reason failed to timely pay his wages, and ultimately, terminated his employment.

183.    On December 10, 2020, R&R Enterprise requested Mr. Whitfield to drive by their stores to monitor their activity even though Mr. Whitfield had informed them that he had been exposed to COVID-19.

184.    On December 21, 2020, even though Mr. Whitfield had already notified them on November 30, 2020, that he would be taking leave from work from December 18, 2020, to December 20, 2020, the Owners emailed him that they did not remember him requesting days off. When Mr. Whitfield reminded them of his request, Owners' subsequently asked Mr. Whitfield why he was traveling if his wife and son had tested positive for Covid-19 over a week prior.

185.    On January 22, 2021, R&R Enterprise issued Mr. Whitfield a written reprimand, baselessly citing unsatisfactory performance. R&R Enterprise issued this final written warning to Mr. Whitfield with Mr. Jagdish Sharma present.

186.    Defendants also refused to reinstate Mr. Whitfield to his position as a District Manager, and instead, hired Mr. Jagdish Sharma (Indian) to assume all of Mr. Whitfield's responsibilities.

187.    On or about April 12, 2021, Defendant, R&R Enterprise terminated Mr. Whitfield's employment in violation of 42 U.S.C. § 2000e *et seq*.

188.    Mr. Whitfield was subjected to harassment and unfair scrutiny which the similarly situated District Manager of Indian descent did not receive. But for Mr. Whitfield's national origin (USA), he would not have suffered these adverse employment actions.

189.    As a result of the acts described herein, Plaintiff has suffered considerable damages, including, but not limited to, loss of pay and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

**Count VII**

**Failure to Timely Pay Wages**

**Maryland Wage Payment and Collection Law**

**Md. Code, Labor & Employment §3-501 *et seq*. against R&R Enterprise, LLC., and Rakesh Kalotra and Rajesh Singh, individually.**

190.    Plaintiff incorporates Paragraphs 1 through 91 of this Complaint as if fully alleged herein.

191.    Pursuant to Md. Code, Labor and Employment §3-502, an employer shall pay its employees at least once in every 2 weeks or twice in each month.

192.    Defendants are employers pursuant to Md. Code, Labor and Employment §3- 501, *et, seq*.

193.    Owners, Rajesh Singh and Rakesh Kalotra, have ownership interests in R&R.

194.    Mr. Whitfield was an employee of the Defendants pursuant to Md. Code, Labor and Employment §3-501, *et, seq*.

195.     Pursuant to Md. Code, Labor and Employment §3-507.2, "if an employer fails to pay an employee in accordance with §3-502 "after two weeks have elapsed from the date on which the employer is required to have paid the wages, the employee may bring an action against the employer to recover the unpaid wages."

196.     Mr. Whitfield—at home nursing his injuries and still waiting on Workers' Compensation claim—was in no position to miss paychecks. R&R Enterprise was required to pay Mr. Whitfield via direct deposit on February 3, 2021. However, without receiving a request from Mr. Whitfield or providing notice to Mr. Whitfield, Defendants unilaterally changed the method of payment from direct deposit to a traditional paper check. Owners then emailed Mr. Whitfield, who was still injured and receiving medical treatment following his fall, to contact his apparent replacement, Jagdish Sharma, to pick up of his paycheck and surrender his work keys and any R&R possessions.

197.     Mr. Whitfield did not receive his paycheck for another two weeks; on February 16, 2021. However, Defendants failed to endorse the check. Mr. Whitfield alerted Owners to the issue immediately, but R&R did not correct it until February 24, 2021—three weeks after the scheduled direct deposit date.

198.     Upon termination of Mr. Whitfield's employment, Maryland law required Defendants to pay Mr. Whitfield his unpaid wages on or before the day on which the wages would have been due if the employment had not been terminated. Defendants failed to pay Mr. Whitfield $841.80 for December 2020 mileage reimbursement; $445.05 for January 2021 mileage reimbursement; and approximately three weeks of earned paid time off.

199.     The Defendants, by failing to timely pay Mr. Whitfield, have violated Md. Code, Labor and Employment §3-502. More than two weeks have elapsed from the date on which the

Defendants were required to pay the Mr. Whitfield under Maryland law, and there is no *bona fide* dispute between Mr. Whitfield and Defendants to justify the non-payment of wages.

200.   Under the MWPCL, Defendants' failure to timely pay Mr. Whitfield his wages and illegally withholding mileage reimbursement and wages equal to three weeks of vacation time makes them liable for treble damages, reasonable attorneys' fees and other costs.

201.   As a result of the acts described herein, Plaintiff has suffered considerable damages, including, but not limited to, loss of pay and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

## Count VIII

**Wrongful Discharge in Violation of Maryland Public Policy against R&R Enterprise, LLC.**

202.   Plaintiff incorporates Paragraphs 1 through 91 of this Complaint as if fully alleged herein.

203.   Terminating the employment of an employee solely because the employee filed a Workers' Compensation claim is a violation of Md. Code Ann., Labor and Employment Article, § 9-1105.

204.   Maryland Code Ann., Labor and Employment Article, §9-1105(a) sets forth a clear mandate of Maryland public policy: "An employer may not discharge a covered employee from employment solely because the covered employee files a claim for compensation under this title."

205.   Maryland recognizes a cause of action for abusive discharge by an employer of an at-will employee when the motivation for the discharge contravenes some clear mandate of public policy.

206.    Discharging an employee solely because that employee filed a workers' compensation claim contravenes the clear mandate of Maryland public policy set forth in Md. Code Ann., Labor and Employment Article, §9-1105(a) and gives rise to a cause of action for wrongful discharge.

207.    On January 22, 2021, Mr. Whitfield fell and sustained serious injuries while climbing a ladder at Defendant, R&R Enterprise's Landover Store to repair the wiring for the store's malfunctioning computers. Mr. Whitfield sustained injuries to his head, neck, shoulder and back, which required immediate medical attention at Righttime Medical Care, 2401 Brandermill Boulevard, Gambrills, Maryland.

208.    On January 25, 2021, Mr. Whitfield visited Head First Sports Injury and Concussion Care. Mr. Whitfield's condition was severe enough that Dr. Karen Laugel, M.D. instructed him not to return to work until he is reevaluated in two weeks' time. Dr. Karen Laugel instructed Mr. Whitfield to refrain from driving or heavy lifting. Mr. Whitfield was to make appointments for a head and neck CT scans, an orthopedic evaluation for his neck, shoulder and back, and physical therapy.

209.    Because he would be unable to work for an extensive period, Mr. Whitfield filed a Workers' Compensation claim with the Maryland Workers' Compensation Commission on January 25, 2021.

210.    Defendants, R&R Enterprise, was aware of Mr. Whitfield's Workers' compensation claim and admitted to such on the April 12, 2021 termination letter.

211.    On or around April 12, 2021, Defendants terminated Mr. Whitfield's employment.

212.    Defendant terminated Mr. Whitfield's employment solely because he filed a workers' compensation claim.

213.     Defendants engaged in the unlawful practices described above with actual malice or with callous or reckless disregard for Mr. Whitfield's rights.

214.     As a result of the acts described herein, Plaintiff has suffered considerable damages, including, but not limited to, loss of pay and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, Darnell Whitfield, requests the entry of a judgment in his favor and against Defendants, R&R Enterprise LLC, Checkers Drive-In Restaurants, Inc, Rakesh Kalotra and Rajesh Singh., jointly and severally, as follows:

A.   award compensatory damages through the date of judgment;

B.   award punitive damages;

C.   award reasonable attorneys' fees and costs incurred herein;

D.   award pre- and post-judgment interest on all amounts owed as allowed by law; and

E.   grant such other and further relief as this Court deems just and appropriate.

## JURY TRIAL DEMAND

Wherefore, Plaintiff, Darnell Whitfield, demands trial by jury on all issues so triable.

Respectfully submitted,


*/s/ Jamaal W. Stafford*
Jamaal W. Stafford, Esq. (Bar No. 29491)
Kwabena Owusu-Koduah, Esq. (Bar No. 21981)
The Law Firm of J.W. Stafford, LLC
20 S. Charles Street, Suite 901

Baltimore, Maryland 21201
410.514.6099
jay@staffordtrialteam.com
kwabena@staffordtrialteam.com
*Attorneys for Plaintiff*