IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| **DARNELL WHITFIELD,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No.: GLS-22-2957 |
| ) | |
| **R&R ENTERPRISE, LLC, *et al.*,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION**

This case is before the undersigned for all proceedings with the consent of the parties pursuant to 28 U.S.C. § 636(c). (ECF No. 35).

Pending before this Court is "Defendant Checkers Drive-In Restaurants' Motion to Dismiss the Amended Complaint" and memorandum in support thereto ("Motion to Dismiss" or "the Motion"), filed by Defendant Checkers Drive-In Restaurants, Inc. ("Defendant Checkers"). (ECF Nos. 66, 67). These issues have been fully briefed, (*see* ECF Nos. 69, 69-1, and 72), and this Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023).

For the reasons set forth below, the Court will **DENY** Defendant Checkers' Motion.

I. **BACKGROUND**

A. **Procedural Background**

On November 15, 2022, Plaintiff Darnell Whitfield ("Plaintiff") filed a Complaint against Defendant Checkers, R&R Enterprise, LLC ("Defendant R&R"), Rakesh Kalotra, and Rajesh Singh, in which Plaintiff advanced eight causes of action. (ECF No. 1).

On December 15, 2022, Defendant Checkers filed a motion to dismiss the complaint and memorandum in support thereto, which the Court denied as premature. (ECF Nos. 9-11). On

January 12, 2023, Plaintiff filed a request for leave to file an amended complaint contemporaneously with the Amended Complaint. (ECF No. 13). Thereafter, Plaintiff filed a "Motion for Leave to Amend Complaint." (ECF No. 17).

On February 14, 2023, the Court held a status teleconference, and on February 17, 2023, the Court issued an order resolving a series of outstanding motions. (ECF Nos. 33, 37). Of particular relevance, the Court granted Plaintiff's request to file an amended complaint. (ECF No. 37). That same day, Plaintiff filed the First Amended Complaint. (ECF No. 38, "First Amended Complaint"). The First Amended Complaint has eight counts: Count I: unlawful interference and denial of benefits, in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; Count II: failure to engage in the interactive process, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; Count III: hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"); Count IV: retaliation, in violation of Title VII; Count V: race discrimination, in violation of Title VII; Count VI: national origin discrimination, in violation of Title VII; Count VII: violation of the Maryland Wage Payment and Collection Law, Md. Code Ann. Lab. & Empl. § 3-501 ("MWPCL"), failure to page wages due; and Count VIII: wrongful discharge in violation of public policy under Maryland common law. (*Id.*). Count I is against Defendants R&R, Checkers, Kalotra, and Singh. Counts II through VI are against Defendants R&R and Checkers. Count VII is against Defendants R&R, Kalotra, and Singh, and Count VIII is against Defendant R&R.

On February 28, 2023, Defendant Checkers filed its request to file a motion to dismiss the First Amended Complaint. (ECF No. 40). In compliance with the Court's Order, Plaintiff filed responses thereto. (ECF Nos. 42, 43, 47).

On March 17, 2023, March 18, 2023, and March 27, 2023, Defendants Kalotra, Singh, and R&R filed their Answers to the First Amended Complaint, respectively. (ECF Nos. 44, 45, 54).

On April 27, 2023, the Court held a status teleconference, wherein the Court set the briefing schedule for Defendant Checkers' motion to dismiss. (ECF No. 62).

The parties complied with the Court's motion to dismiss briefing schedule by filing their respective pleadings: the Motion to Dismiss, attached to which was an exhibit called "Checkers Drive-in Restaurants, Inc. Franchise Agreement" ("the Agreement") (ECF No. 67; ECF No. 67-1, the "Agreement"); an "Opposition to Defendant Checkers Drive-In Restaurants, Inc.'s Motion to Dismiss" ("Plaintiff's Opposition") (ECF Nos. 69, 69-1); and "Defendant Checkers Drive-In Restaurants' Reply in Support of its Motion to Dismiss the Amended Complaint." ("Reply") (ECF No. 72).

### B. Factual Background[1]

Plaintiff is an African-American man born in the United States. (First Amended Complaint, ¶¶ 10). On March 31, 1995, Jay Smith, the previous owner of a Checkers Drive-In Restaurant located in Oxon Hill, Maryland, hired Plaintiff as the general manager. (*Id.*, ¶¶ 12, 13). Thereafter, Mr. Smith promoted Plaintiff to district manager of eleven Checkers Drive-In Restaurants. (*Id.*, ¶¶ 14-16). Defendants Singh and Kalotra own R&R Enterprise, LLC, a Checkers Drive-In Restaurants' franchisee. (*Id.*, ¶¶ 2, 4, 5, 17).

On August 31, 2019, Defendants Singh and Kalotra purchased six Checkers Drive-In restaurants that Plaintiff managed. (*Id.*, ¶ 17) ("R&R Checkers locations"). At the recommendation

---

[1] Unless otherwise noted, the facts are taken from the First Amended Complaint, ECF No. 38. The facts are construed in the light most favorable to Plaintiff, the non-moving party. *See Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023).

of Mr. Smith, Defendants Singh and Kalotra agreed that Plaintiff would be the district manager of the R&R Checkers locations and report directly to them. (*Id.*, ¶¶ 18-22).

Plaintiff's job responsibilities consisted of: (a) managing all R&R Checkers locations and their 75 employees; (b) attending Defendant Checkers' mandatory quarterly meetings; and (c) ensuring R&R Checkers locations complied with Defendant Checkers' policies. (*Id.*, ¶¶ 24, 25, 91).

Defendant Checkers had the authority to approve or disapprove of R&R manager-level employees. (*Id.*, ¶ 28). Specifically, Defendant Checkers determined the requisite job skills of manager-level employees and required Defendants Singh and Kalotra to provide the names of each manager-level employee. (*Id.*). If Defendant Checkers did not approve of a proposed R&R manager-level candidate, it required Defendants Singh and Kalotra to appoint an employee that met its competency and proficiency standards. (*Id.*). In addition, Defendant Checkers sent its team members to conduct manager-level trainings at R&R Checkers locations. (*Id.*, ¶ 30). Defendant Checkers also facilitated the hiring of nonmanager-level employees that applied through its website. (*Id.*, ¶ 29).

Defendant Checkers determined the operational standards of R&R Checkers locations. (*Id.*, ¶ 29, 30). For example, Defendant Checkers imposed restrictions on the appearance and layout of R&R Checkers locations. (*Id.*, ¶ 29). Defendant Checkers also had the authority to control Plaintiff's employment, and set forth additional guidelines related to R&R employees' working conditions and job performance in its Team Member Handbook. (*Id.*, ¶¶ 31, 32). Every two to three months, Defendant Checkers' business consultant inspected the R&R Checkers locations to ensure compliance with its operational, food, and safety standards. (*Id.*, ¶ 29). Finally, Defendant

Checkers had the authority to terminate R&R employees and its franchise agreement with R&R for violations of law. (*Id.*, ¶ 32).

Between January 2020 and December 2020, Plaintiff complained of numerous instances where Defendants Singh and Kalotra made threatening and racially inflammatory remarks towards R&R's predominately African American staff. (*Id.*, ¶¶ 23, 33-37). On February 7, 2020, Plaintiff emailed Defendants Singh and Kalotra about an employee's concern that African American staff members "constantly [felt] bullied and threatened by [the Owners] because of [their] tone and demands." (*Id.*, ¶ 39). After Plaintiff complained of the alleged discriminatory statements, Defendants Singh and Kalotra continued to make racially charged remarks such as, "you people are used to getting handouts, but they are going to have to work and prove themselves to me;" "those people are very smart, but they are good liars and thieves and will rob you blind;" and "[Plaintiff], I don't want to fire you, I would rather work with the 'devil' I know than the 'devil' I don't know." (*Id.*, ¶¶ 34-37).

In addition, Defendants Singh and Kalotra asked Plaintiff to falsify a police report by saying that African-American customers were "doing drugs" because Defendants Singh and Kalotra did not want the customers lingering at the restaurant. (*Id.*, ¶ 38).

On or around December 14, 2020, Defendants Singh and Kalotra forced Plaintiff to hang posters that Plaintiff, African-American staff, and customers described as offensive and derogatory. (*Id.*, ¶ 43). The poster, which featured six photographs of a Black Labrador Retriever with instructions on how to properly wash hands and wear masks, was anonymously posted online with the caption, "What does [sic] black dogs have to do with Covid-19. Only black-African American [sic] works at my location." (*Id.*, ¶¶ 44, 47, 50). When Plaintiff complained to Defendant Kalotra, Defendant Kalotra called Plaintiff "insubordinate" and stated that he did not care what the

employees thought of the poster. (*Id.*, ¶ 44, 47). Defendants Singh and Kalotra later instructed the managers to remove the posters and stated that "the poster was purely intended for training purposes and not intended to offend anyone." (*Id.*, ¶ 49, 50). The next day, Defendants Singh and Kalotra failed to attend the mandatory meeting they had scheduled to discuss Plaintiff's "insubordinate" behavior. (*Id.*, ¶ 51, 52).

Plaintiff maintained satisfactory performance reviews until he complained of race and national origin discrimination. (*Id.*, ¶ 23). Defendant Checkers required its employees to submit complaints through its website or employee complaint resolution hotline, both of which were managed and operated by Defendant Checkers. (*Id.*, ¶¶ 31, 53). As required by Defendant Checkers' Team Member Handbook, on December 22, 2020, Plaintiff filed a formal complaint on Defendant Checkers' website related to the following: (1) Defendants Singh and Kalotra's failure to timely pay employees; (2) ongoing discriminatory treatment; (3) retaliatory acts; and (4) hostile work environment. (*Id.*, ¶ 53). On or around January 11, 2021, counsel for R&R informed Plaintiff that his complaint against Defendant Checkers and R&R was under investigation and requested additional information. (*Id.*, ¶¶ 55-57). On January 18, 2021, Plaintiff provided the additional information, but Defendants Checkers and R&R failed to respond to Plaintiff's complaint. (*Id.*, ¶¶ 58-60).

Defendants Singh and Kalotra "began a sustained campaign of harassment and retaliation" against Plaintiff for complaining about discrimination and about a hostile work environment. (*Id.*, ¶ 61, 62). On December 28, 2020, Defendant Kalotra warned Plaintiff that he would face disciplinary actions leading to a suspension or termination, because Plaintiff allegedly failed to timely meet Checkers' compliance metrics by not submitting a report related to mandatory food

and safety, sanitation and equipment standards. However, Plaintiff had timely submitted the report. (*Id.*, ¶¶ 63, 64).

On January 13, 2021, Plaintiff took medical leave due to a stress-related illness. (*Id.*, ¶¶ 65, 66). Three days later, Defendants Singh and Kalotra began new-hire paperwork for Plaintiff's replacement, Mr. Jagdish Sharma. Defendants Singh and Kalotra also advised Plaintiff to not communicate with R&R employees until Plaintiff completed a Physician's Release to Return Work Form. (*Id.*, ¶¶ 67, 68). On January 21, 2021, Plaintiff submitted the return-to-work release form completed by his physician. (*Id.*, ¶ 68).

On January 22, 2021, Defendant Kalotra confronted Plaintiff about his discrimination/retaliation complaint. (*Id.*, ¶ 70). That same morning, Defendants Singh and Kalotra issued a final written warning to Plaintiff for unsatisfactory job performance due to Plaintiff's alleged failure to "follow up" on the mandatory compliance standards related to food safety, sanitation, and equipment. (*Id.*, ¶¶ 71, 72). Later that day, Plaintiff fell from a ladder while conducting mechanical repairs at R&R's Landover location. (*Id.*, ¶¶ 73-76). The R&R Landover manager immediately notified Defendants Singh and Kalotra of Plaintiff's injuries. (*Id.*, ¶ 75).

On January 25, 2021, Plaintiff informed Defendants Singh and Kalotra that he was unable to return to work until his doctor revaluated his injuries, which would not occur for two weeks. (*Id.*, ¶ 76). Plaintiff then requested FLMA paperwork and filed a worker's compensation claim. (*Id.*, ¶¶ 78, 79). That same day, Defendant Kalotra notified his employees that Mr. Sharma would take over Plaintiff's responsibilities. (*Id.*, ¶ 75).

On January 27, 2021, R&R informed Plaintiff via counsel that he could no longer be on R&R property without the approval of Defendants Singh and Kalotra. R&R also requested all of

Plaintiff's medical records, and barred Plaintiff from communicating with any R&R employee about the January 22, 2021 incident or about his employment. (*Id.*, ¶¶ 82, 83).

On January 29, 2021, Plaintiff filed a Charge of Discrimination against Defendants with the Maryland Commission on Civil Rights. (*Id.*, ¶ 84). Thereafter, Plaintiff continued requesting FMLA paperwork from Defendants Singh and Kalotra but never received a response from them. (*Id.*, ¶ 85). While on leave, Plaintiff was paid three weeks late, after Defendants Singh and Kalotra unilaterally changed Plaintiff's payment method from direct deposit to traditional check. (*Id.*, ¶¶ 86-89).

On March 31, 2021, Plaintiff informed Defendants Singh and Kalotra that he was excited to be medically cleared to return to work on April 5, 2021. (*Id.*, ¶¶ 90-92). However, Plaintiff suffered a setback on April 2, 2021. (*Id.*, ¶ 93). Plaintiff did not receive a response after he informed Defendants Singh and Kalotra that he would return to work on April 19, 2021. (*Id.*). Instead, on April 12, 2021, Defendants Singh and Kalotra terminated Plaintiff's position because they were "unable to keep his managerial position open for an extended period of time." (*Id.*, ¶ 94).

Defendants Singh and Kalotra failed to pay Plaintiff approximately $1,286.85 in mileage reimbursement and approximately $6,000 in paid time off, as required by the Defendant Checkers' Team Member Handbook. (*Id.*, ¶¶ 95, 96).

## II.   LEGAL STANDARDS

### A.  Motion to Dismiss for Failure to State a Claim

A defendant who files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is asserting that, even if a court construes the facts advanced in the plaintiff's complaint as true, the complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint

must provide a defendant with "fair notice of what the claim is and the grounds upon which it rests." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). In other words, a complaint must contain sufficient facts and must state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (complaint must set forth enough facts as to suggest a "cognizable cause of action"). A claim has "facial plausibility" when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When resolving a 12(b)(6) motion, a court accepts as true the well-pleaded allegations in a complaint. *Lokhova. v. Halper,* 995 F.3d 134, 141 (4th Cir. 2021). Furthermore, a court "does not resolve contests surrounding the facts [or] the merits of a claim." *Ray*, 948 F.3d at 226 (citation omitted).

### B.  Consideration of Documents Outside of Pleadings

In general, when a motion is filed pursuant to Fed. R. Civ. P. 12(b)(6), a court generally limits its review to the allegations in the complaint. *Goines v. Valley Cmty. Servs. Bd*., 822 F.3d 159, 166 (4th Cir. 2016) (citing *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013)). A trial court enjoys "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Kelly v. Lease*, Civ. No. RDB-16-3294, 2017 WL 2377795, at *1 (D. Md. May 31, 2017) (quoting 5 C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1366 at 159 (3d ed. 2004, 2011 Supp.)).

There are two circumstances under which a court may consider additional documents outside of the pleading and not convert it to a summary judgment motion: (1) if the documents are explicitly incorporated into a complaint by reference, *Goines*, *supra*, 822 F.3d at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); or (2) when a document was "not attached to or expressly incorporated [by reference] in a complaint," provided that the document "was integral to the complaint and there is no dispute about the document's authenticity." *Goines, supra*, 822 F.3d at 166 (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007)). Under these circumstances, a court does not run afoul of Fed. R. Civ. P. 12(d). *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

In this case, Defendant Checkers attached a "Checkers Drive-in Restaurants, Inc. Franchise Agreement ("the Agreement") to its Motion, and asks the Court "to consider [the Agreement] as integral to the Complaint." (Motion, p. 7 n 5). However, Defendant Checkers also asks the Court to not consider the Agreement if the Court is inclined to convert its Motion to a summary judgment motion. (*See Id.*). As a preliminary matter, such a request is illogical and runs afoul of the law. *See Goines*, *supra*, 822 F.3d at166.

Next, contrary to Defendant Checkers' argument, the Agreement is not integral just because Plaintiff references it in the First Amended Complaint. *See Goines*, *supra*, 822 F.3d at 166 (citing *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint")). Moreover, "[a]n integral document is a document that by its 'very existence, and *not the mere information it contains,* gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602,

611 (D. Md. 2011) (emphasis in original). Thus, the Court finds unavailing Defendant Checkers' argument that the Court should consider additional language in the Agreement that Plaintiff ignored because it demonstrates that it is not an employer.

Accordingly, the Court declines to consider the Agreement at this juncture because it is not integral to the First Amended Complaint. *See Goines*, *supra*, 822 F.3d at 166; *see also Heward v. Bd. of Educ. of Anne Arundel Cnty.*, Civ. No. ELH-23-195, 2023 WL 6381498, at *19 (D. Md. Sept. 29, 2023) (declining to consider reports attached to motion to dismiss because "[t]hese documents are not 'integral' to the Amended Complaint, nor do they give rise to the legal rights asserted").

### III. DISCUSSION

#### A. Parties' Arguments

Defendant Checkers asserts that Counts I through VI of the First Amended Complaint should be dismissed, without the need for discovery, because Plaintiff failed to sufficiently allege facts to establish that it is a joint employer under Title VII, the ADA, and the FMLA. (Motion, pp. 4-10). Defendant Checkers further argues that discovery is not warranted on the issue of joint employment because Plaintiff failed to plausibly demonstrate that it is a joint employer. (Motion, p. 6).

Plaintiff counters that the First Amended Complaint alleges facts sufficient to establish that Defendant Checkers is a joint employer under Title VII, the ADA, and the FMLA. (Plaintiff's Opposition, pp. 5-10). In the alternative, Plaintiff argues that the Court should deny the Motion as premature and allow the parties to engage in discovery on the issue of joint employer. (Plaintiff's Opposition, pp. 5-10).

In its Reply, Defendant Checkers maintains that Plaintiff failed to allege facts to establish a joint employer relationship such that discovery is not warranted on this issue. (Reply, pp. 1-10).

**B.  Joint Employer Status Under Title VII, the ADA, and the FMLA**

In cases involving Title VII, the ADA, and the FMLA, it is possible for more than one entity to jointly employ an individual. *See Butler v. Drive Auto. Industries of Am., Inc.*, 793 F.3d 404, 408 (4th Cir. 2015) (Title VII); *see also Quintana v. City of Alexandria*, 692 F. App'x 122, 125 (4th Cir. 2017) (ADA); *see also U.S. EEOC v. CACI Secured Transformations, LLC*, Civ. No. JKB-19-2693, 2021 WL 1840807, at * 6 (D. Md. May 7, 2021) (FMLA).

In cases involving the ADA, an entity may be a "joint employer" if "it exercised sufficient control over the terms and conditions of [a] plaintiff's employment." *CACI Secured Transformations, LLC*, *supra*, 2021 WL 1840807, at * 6 (quoting *Evans v. Md. State Highway Admin.*, Civ. No. JKB-18-0935, 2018 WL 4733159, at *5 (D. Md. Oct. 2, 2018)). In a Title VII case, there is a "hybrid test" that courts use to determine whether an entity is a "joint employer," with "control remain[ing] the principal guidepost for determining whether multiple entities can be [a] plaintiff's joint employers." *Butler, supra,* 793 F.3d at 414-15. In an FMLA case, "the implementing regulations. . . expressly provide for the possibility of joint employment under the statute." *Ensor v. Jenkins*, Civ. No. ELH-20-1266, 2021 WL 1139760, at *41 (D. Md. Mar. 25, 2021) (citing *Quintana*, *supra*, 692 F. App'x at 125 (quoting 29 C.F.R. § 825.106(a))).

Considering the claims filed in the instant case, the Court finds that *Butler* offers a guidepost for its analysis. To determine whether an entity is a joint employer, courts consider the following nine factors:

> (1) authority to hire and fire the individual;
> (2) day-to-day supervision of the individual, including employee discipline;
> (3) whether the putative employer furnishes the equipment used and

> the place of work;
> (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
> (5) the length of time during which the individual has worked for the putative employer;
> (6) whether the putative employer provides the individual with formal or informal training;
> (7) whether the individual's duties are akin to a regular employee's duties;
> (8) whether the individual is assigned solely to the putative employer; and
> (9) whether the individual and putative employer intended to enter into an employment relationship.

*Butler*, 793 F.3d at 414; *see also Ensor*, *supra*, 2021 WL 1139760, at *41 (citing *Butler*, *supra*, 793 F.3d at 414) (FMLA)); *CACI Secured Transformations, LLC*, *supra*, 2021 WL 1840807, at *6 (same) (ADA).

The *Butler* court makes clear that "no one factor is determinative, and the consideration of factors must relate to the particular relationship under consideration." 793 F.3d at 414-15 (citing *Cilecek v. Inova Health Sys. Servs.,* 115 F.3d 256, 260 (4th Cir.1997)). Although the first three factors are the most important to determine whether a joint employment relationship exists, "control remains the principal guidepost for determining whether multiple entities can be a plaintiff's joint employers." *Id.* The Fourth Circuit has also made clear that courts can modify the *Butler* factors to the specific industry context. *See Cilecek*, *supra*, 115 F.3d at 261 (factors refashioned to analyze a hospital setting); *see also Bender v. Suburban Hosp.*, 998 F. Supp. 631, 635 (D. Md.), *aff'd sub nom. Bender v. Suburban Hosp., Inc.*, 159 F.3d 186 (4th Cir. 1998) (same).

### C. Analysis of *Butler* Factors

#### 1. Butler Factor 1: Authority to Hire and Fire Plaintiff

Viewing the facts in the light most favorable to the non-moving party, Plaintiff has plausibly alleged facts to support an inference that Defendant Checkers had the authority to hire

13

and fire him. Specifically, Plaintiff alleges that Defendant Checkers had the authority to approve and disapprove the hiring of manager-level employees, like himself, who were proposed by Defendants Singh and Kalotra, by determining the requisite job skills necessary for the position. (First Amended Complaint, ¶ 28). If Defendant Checkers did not approve of a proposed R&R manager-level candidate, it required Defendants Singh and Kalotra to appoint an employee that met its competency and proficiency standards. (*Id.*) In addition, Checkers Drive-In Restaurants facilitated the hiring of R&R Enterprise employees by allowing candidates to apply through their website. (*Id.*, ¶ 29). Moreover, Defendant Checkers sent its team members to conduct manager-level trainings at R&R Checkers locations. (*Id.*, ¶ 30). Plaintiff further alleges that Defendants Singh and Kalotra met with Plaintiff and informed Plaintiff that he would remain the District Manager under their ownership. (*Id.,* ¶ 19). Finally, Defendant Checkers had the authority to terminate R&R employees and its franchise agreement with R&R for violations of law. (*Id.*, ¶ 32). Thus, drawing all reasonable inferences in favor of the Plaintiff, the Court can conclude that Plaintiff has adequately pleaded facts that plausibly allege that Defendant Checkers approved Defendants Singh and Kalotra's decision to hire him as general manager.

> 2. *Butler Factor 2: Day-to-day Supervision of Plaintiff, including Employee Discipline*

Turning to the second factor, Plaintiff alleges that Defendant Checkers exercised control over his day-to-day responsibilities by conducting trainings of manager-level employees and overseeing R&R's customer and employee complaint resolution hotline. (*Id.,* ¶¶ 27, 30). Plaintiff further alleges that Defendants Singh and Kalotra were required to investigate and resolve the customer and employee complaints within 48 hours. And if Defendants Singh and Kalotra failed to do so, Defendant Checkers' business consultant would inquire about the delay. (*Id.,* ¶ 27). Specifically, Plaintiff alleges that Defendant Checkers determined the operational standards of

R&R Checkers locations, (*Id.*, ¶¶ 24, 31, 32), which clearly influenced whether Plaintiff and all R&R locations staff could remain employed. For example, Defendant Checkers imposed restrictions on the appearance and layout of R&R Checkers locations. (*Id.*, ¶ 31). Defendant Checkers also had the authority to control Plaintiff's employment, and set forth additional guidelines related to R&R employees' working conditions and job performance in its Team Member Handbook. (*Id.*).

After carefully sifting through the First Amended Complaint, the Court finds that, when construing the articulated facts in his favor, Plaintiff makes specific allegations to plausibly demonstrate that Defendant Checkers exercised control over his day-to-day responsibilities. Thus, when viewing the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged facts with sufficiently particularity to satisfy the second *Butler* factor.

    3.   *Butler Factor 3: Whether Defendant Checkers furnishes the Equipment Used and the Place of Work*

Turning to the third factor, Plaintiff alleges that Defendant Checkers had the authority to control his employment and working conditions through its franchise agreement and Team Member handbook. (*Id.*, ¶¶ 31, 32). More specifically, Plaintiff alleges that R&R employees were required to perform their work in accordance with the Checkers' Team Member Handbook. (*Id.*, ¶ 31). Plaintiff further alleges that Defendant Checkers controlled the operations of R&R Checkers locations by imposing restrictions on the restaurants' layout and appearance as well as setting the operational and management standards that Plaintiff enforced as general manager. (*Id.*). In addition, every two to three months, Defendant Checkers' business consultant inspected the R&R Checkers locations to ensure compliance with its mandatory operational, food, safety and equipment standards. (*Id.*, ¶¶ 25, 63). Plaintiff was expected to abide by these mandatory standards. (*Id.*, ¶¶ 25, 32). When Defendants Kalotra and Singh were unavailable, Plaintiff met with

Defendant Checkers' business consultant. (*Id.*, ¶ 25). Moreover, Defendant Kalotra warned Plaintiff that he would face disciplinary actions leading to a suspension or termination because Plaintiff allegedly failed to timely meet Defendant Checkers' compliance metrics by not submitting a report related to mandatory food and safety, sanitation and equipment standards. (*Id.*, ¶ 63). Thus, when viewing the facts in the light most favorable to Plaintiff, the First Amended Complaint plausibly alleges that Defendant Checkers controlled how Plaintiff's work took place and expected compliance with its mandatory standards, including those related to the equipment in place at the R&R Checkers locations.

Thus, Plaintiff has pleaded facts with sufficient particularity related to the three most important *Butler* factors. Accordingly, Plaintiff has established that Defendant Checkers, as a franchisor, is a joint employer under Title VII, the ADA, and the FMLA. *See Lora*, *supra*, 2017 WL 3189406, at * 7 (finding that plaintiffs adequately pleaded facts that franchisor exercised control to establish joint employment).

Because the Court has already found that Plaintiff has satisfied the first three *Butler* factors, the Court can end its analysis. Nonetheless, the Court continued to analyze the remaining *Butler* factors, as set forth below.

> 4. *Butler Factor 4: Defendant Checkers' Possession of and Responsibility over Plaintiff's Employment Records*

The Court finds that the First Amended Complaint contains no allegations that would satisfy the fourth *Butler* factor. However, this reality does not ultimately lead the Court to a different result. The law is clear that the first three factors are the most important, and Plaintiff need not meet every factor of the joint employer test to state a plausible claim for relief. *Butler*, 793 F.3d at 414-15. Thus, the absence of this fourth factor is not dispositive of Plaintiff's claims. *See Lora v. Ledo Pizza System, Inc.*, Civ. No. DKC-16-4002, 2017 WL 3189406, at * 7 (D. Md.

July 27, 2017) (denying motion to dismiss where plaintiffs sufficiently pleaded facts to satisfy the first, second, and sixth *Butler* factors).

> 5. *Butler Factor 5: The Length of Time During Which Plaintiff Has Worked for Defendant Checkers*

The fifth factor is easily met here, as the First Amended Complaint alleges that Plaintiff began his career as a general manager at a Checkers Drive-In Restaurant in Oxon Hill, Maryland on March 31, 1995. (First Amended Complaint, ¶ 12). Plaintiff further alleges that he remained the district manager when R&R purchased multiple Checkers Drive-In Restaurants on August 31, 2019. (*Id.*, ¶ 17). Thus, when reading the First Amended Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff alleges with sufficient particularity facts to establish the fifth *Butler* factor.

> 6. *Butler Factor 6: Whether Defendant Checkers Provides Plaintiff with Formal or Informal Training*

The First Amended Complaint also adequately pleads facts to satisfy the sixth *Butler* factor, namely that Plaintiff attended quarterly trainings conducted and sponsored by Defendant Checkers. (*Id.*, ¶¶ 24, 30). Thus, drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has plausibly alleged that Defendant Checkers provided formal or informal training to Plaintiff.

> 7. *Remaining Butler Factors*

The seventh and eighth *Butler* factors, which assess whether the individual's duties are "akin to a regular employee's duties," and "whether the individual is assigned solely to the putative employer" are of particular relevance in the independent contractor/employee relationship context. *Butler*, *supra*, 793 F.3d at 409 (analyzing multiple entities' control over plaintiff "where the status of the plaintiff as an employee or independent contractor is at issue"); *see also CACI Secured*

17

*Transformations, LLC*, *supra*, 2021 WL 1840807, at *9 n. 7 ("Given the Fourth Circuit's articulation of factor three as a proxy for comparing the putative employee with a formal employee, this facet of the relationship appears to be double-counted in the *Butler* analysis [under factor seven]"). However, the *Butler* factors "are not intended for mechanical application, but instead provide a framework to elicit the true nature of a putative employment relationship." *Greene v. Harris Corp.*, 653 F. App'x 160, 164 (4th Cir. 2016). In this case, Plaintiff worked solely and exclusively for the Defendants.

Under the ninth *Butler* factor, the Court considers whether Plaintiff and Defendant Checkers intended to enter an employment relationship. The Court finds that the First Amended Complaint contains no allegations to satisfy the ninth factor. However, the absence of this factor is not dispositive of Plaintiff's claims because as held above, the first three factors are most important in determining whether Defendant Checkers is a joint employer. *See Butler*, *supra*, 793 F.3d at 415 n.13. ("the [first] three factors that we stated are most important to the joint employment context).

The Court is mindful that, in this Circuit, "[c]ourts evaluating franchise relationship[s] for joint employment have routinely concluded that a franchisor's expansive control over a franchisee does not create a joint employment relationship" on its own. *See Lora*, *supra*, 2017 WL 3189406, at * 5 (quoting *Jacobson v. Comcast Corp.*, 740 F.Supp.2d 683, 690 n.6 (D. Md. 2010)) (internal quotation marks omitted). However, as held above, Plaintiff also sufficiently pleaded facts, that if proven, establish the essential *Butler* control factors. Accordingly, the Motion shall be denied.

## IV. CONCLUSION

In sum, the Court finds that Plaintiff pleads with sufficient particularity facts to establish the first, second, third, fifth, and sixth *Butler* factors. In addition, the seventh and eighth *Butler*

factors do not apply in this context. Therefore, the Plaintiff does not need to satisfy them. Moreover, although no factor is dispositive, Plaintiff has plausibly alleged facts to satisfy the three most important factors. *Butler*, 793 F.3d at 414-15.

For the foregoing reasons, Plaintiff has stated claims upon which relief can be granted. Accordingly, the Motion to Dismiss, (ECF Nos. 66, 67), is hereby **DENIED**.

A separate Order will follow.

Dated: March 27, 2024 /s/
The Honorable Gina L. Simms
United States Magistrate Judge